UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

```
**********************************
In re:  Claudia G. Gabrielle           *    Chapter 7
                                       *    Case No. 18-10524-BAH
                    Debtor             *
**********************************
Olga L. Gordon, Trustee                *
                                       *
                    Plaintiff          *    Adv. Proc. No. 18-01062-BAH
v.                                     *
                                       *
Kingdom Communications, Inc.;          *    Hearing Date:  November 28, 2018
Barbara Brown a/k/a Barbara Volz       *    Hearing Time:  2:00 p.m.
a/k/a Barbara Taylor                   *
                    Defendant          *
**********************************
```

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

NOW COME the Defendants, Kingdom Communications, Inc.[1] and Barbara Brown, who by and through their counsel Clifford P. Gallant, Jr., Esquire of the law firm Beliveau, Fradette & Gallant, P.A., pursuant to FRBP 7012(b) and Fed. R. Civ.P. 12(b)(6) as

---

[1] On January 11, 2000 Kingdom Communications, Inc. ['KCI'], a nonprofit corporation, was formed by Barbara Brown in the State of Florida. Shortly thereafter on February 22, 2000, KCI obtained its 501(c)(3) designation along with an EIN from the Internal Revenue Service, it then being organized and operated for religious purposes. Subsequent thereto, on or about September 13, 2000, Brown relocated to the State of California to carry on the same religious activities. However instead of registering KCI in the State of California as a foreign Florida corporation based upon information provided to her, she formed a new corporate entity in that state also named KCI, operating under the same EIN. The Florida corporation [KCI] was involuntarily dissolved in 2001 for failure to file required Florida tax returns. In 2002 Brown relocated to Fairfax, Virginia. In concert therewith, she voluntarily dissolved the California corporation. In Virginia, Brown continued religious activities operating under the name of KCI, using the same EIN until 2011, at which time she relocated to the State of Indiana. At that point, as she had done in the States of Florida and California again based upon information obtained/her understanding, she sought to form another corporate entity in the State of Indiana using the same name, KCI. Upon being advised that name was unavailable, she formed Kingdom Communications Ministry Center, Inc. [KCMCI] in that state on February 7, 2011. She continued to file form 990-N's with the IRS as KCI, using the same EIN. In 2012, Brown relocated to the State of Texas and continued religious activities. She voluntarily dissolved KCMCI in Indiana on May 28, 2013. As she had done previously, in Texas, Brown sought to form a new corporation utilizing the same name [KCI], at which time she was advised that name was unavailable but was told by Texas officials that she could obtain a Texas tax exemption due to having a federal tax exemption. Brown has continued to operate in the State of Texas as KCI, filing 990-N's with the IRS, using the same original EIN. After seeking legal advice, Brown is in the process of retroactively reinstating KCI in the State of Florida by filing missing tax returns. It is anticipated that after filing these tax returns and submitting the reinstatement request, KCI (FL) will be considered an active nonprofit corporation in good standing. IRS Publication 78 presently shows KCI as a public charity eligible to receive tax-deductible contributions.

incorporated therein, respectfully requests that this Honorable Court enter an order dismissing each and every one of the claims advanced in the subject adversary proceeding for failure to state a claim upon which relief can be granted. In support of the within motion, they offer the following:

## - **The Claims Generally And Alleged Transfers** –

1. In the complaint Olga L. Gordon, Chapter 7 Trustee [hereinafter the "Trustee"], has advanced a series of six (6) claims, the breakdown being as follows:

Count I – Avoidance and Recovery of the Two Year Transfers as Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, 551

Count II – Avoidance and Recovery of the Two Year Transfers as Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550, 551

Count III - Avoidance and Recovery of the Four Year Transfers as Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b), 550, 551; N.H. Rev. Stat. § 545-A:4(I)(a)

Count IV – Avoidance and Recovery of the Four Year Transfers as Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b), 550, 551; N.H. Rev. Stat. § 545-A:4(I)(b)

Count V - Avoidance and Recovery of the Four Year Transfers as Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b), 550, 551; N.H. Rev. Stat. § 545-A:5

Count VI – Piercing the Corporate Veil of Kingdom Communications

2. In Paragraph 23 of the complaint the Trustee asserts that within four (4) years of the petition date, that being April 20, 2018, "the Debtor made the following transfers to Kingdom Communications...", proceeding to list the dates, amounts and numbers of 161 different checks totaling $695,874.38. In summary, that breakdown is as follows:

| Year | Number of Checks Issued | Total Amount Of The Checks Listed |
|---|---|---|

| 2014 | 21 | $52,175.54[2] |
|---|---|---|
| 2015 | 44 | 146,283.33 |
| 2016 | 53 | 172,932.00 |
| 2017 | 32 | 259,283.51 |
| 2018 | <u>11</u> | <u>65,200.00[3]</u> |
|  | 161 | $695,874.38 |

- **The Trustee Has Advanced both Actual And Constructive Fraud Claims –**

- **Actual Fraud Claims –**

3. In Counts I and III, the Trustee seeks to avoid each and every one of the 161 transfers as being the result of actual fraud. Specifically in Count I she relies upon Bankruptcy Code Section 548(a)(1)(A), which provides:

> (a)(1) The trustee may avoid any transfer...of an interest of the debtor in property...that was made...on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (A) made such transfer...with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made...indebted.

4. As to Count III, the Trustee relies upon Bankruptcy Code Section 544(b)(1) in order to advance her actual fraud claim under the comparable provision of the New Hampshire Fraudulent Transfer Act [UFTA], which as noted in Footnote 2 above, encompasses a period of four (4) years from the date of the alleged transfers. That Code provision states, in pertinent part:

> ...(T)he trustee may avoid any transfer of an interest of the debtor in

---

[2] While beyond the scope of the within motion, it is noted that seven (7) of the alleged transfers occurring in 2014 totaling $21,819.54 are beyond the four (4) year statute of limitations period. See N.H. RSA 545-A:9 I & II.

[3] It is noted that four (4) of those alleged transfers totaling $23,210.00 occurred post-petition and are therefore clearly outside the purview of the statutory basis upon which the Trustee relies in advancing these various fraudulent transfer claims.

3

property...that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this title or that is not allowable only under Section 502(e) of this title.

5. Relying upon that Code provision, the Trustee employs N.H. RSA 545-A:4 of the UFTA entitled "Transfers Fraudulent As To Present And Future Creditors" in Count III, and more specifically subsection I(a) which, similar to the aforementioned Bankruptcy Code Section 548(a)(1)(A), provides in pertinent part:

> I. A transfer made...by a debtor is fraudulent as to a creditor, whether the creditors claim arose before or after the transfer was made...if the debtor made the transfer...
>
> > a) With actual intent to hinder, delay or defraud any creditor of the debtor.

6. As for what constitutes actual intent to hinder, delay or defraud under the Code Section 548, the First Circuit has established that the Court is to take note of certain indicia or badges of fraud "at the time of the transfer (including) 1) actual or threatened litigation against the debtor; 2) a purported transfer of all or substantially all of the debtor's property; 3) insolvency or other unmanageable indebtedness on the part of the debtor[4]; 4) a special relationship between the debtor and the transferee; and after the transfer, 5) retention by the debtor of the property involved in the putative transfer." In re Catco Recycling, Inc., 2016 BNH 003, 20 citing Max Sugarman Funeral Home Inc. v.

---

[4] As to what constitutes "insolvency" under the Bankruptcy Code, Section 101(32) provides:

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of –
>
> > (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> >
> > (ii) property that may be exempted from property of the estate under section 522 of this title;

Section 101(15) provides that the term "entity" includes a person.

ADB Investors, 926 F.2d 1248, 1254 (1st Cir. 1991).

7. As to what constitutes actual fraud under the UFTA, N.H. RSA 545-A:4 II provides:

> II. In determining actual intent under subparagraph I(a), consideration may be given, among other factors, to whether:
>
> (a) The transfer or obligation was to an insider;
>
> (b) The debtor retained possession or control of the property transferred after the transfer;
>
> (c) The transfer or obligation was disclosed or concealed;
>
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e) The transfer was of substantially all the debtor's assets;
>
> (f) The debtor absconded;
>
> (g) The debtor removed or concealed assets;
>
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;[5]
>
> (j) The transfer occurred shortly before or after a substantial debt was

---

[5] As to what constitutes insolvency under the UFTA, N.H. RSA 545-A:2 defines that term, in pertinent part, as follows:

> I. A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
>
> II. A debtor who is generally not paying his debts as they become due is presumed to be insolvent.
>
> IV. Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.
>
> V. Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

5

incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

- **The Applicability Of FRBP 7009(b), Fed. R. Civ.P. (9(b) & The Factual Allegations Advanced To Support The Fraudulent Transfer Claims –**

8. FRBP 7009 – "Pleading Special Matters" provides that F.R. CivP. 9 applies in adversary proceedings. Subpart (b.) entitled "Fraud or Mistake; Conditions Of Mind" provides that "(i)n alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake..." The requirements of Fed. R. Civ.P. 9(b) have been held to apply in adversary proceedings advanced under Bankruptcy Code Sections 544(b) or 548 alleging actual but not constructive fraud. See In re Financial Resources Mortgage, Inc. and CL&M, Inc. and other jointly administered cases, 2011 BNH 007, 24 citing Buchwald Capital Advisors LLC v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.), Bankr. No. 06-12737 (SMB), Adv. No. 07-2780, 2011 WL 309583, at *10 (Bankr. S.D.N.Y. Jan 25, 2011) and Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC), 445 B.R. 206, 236-238 (Bankr. S.D.N.Y. 2011), along with In re Actrade Financial Technologies LTD, 337 BR 791, 801 (Bkrtcy. S.D.N.Y. 2005).

9. The factual allegations offered in support of the Trustee's claims are set forth in Paragraphs 8 – 30 of the complaint under the section entitled "General Allegations". While in that section the Trustee makes a series of assertions in support of Count VI in which she seeks to pierce the corporate veil of Kingdom Communications (to wit, Paragraphs 10 – 20, 25, and 27), the paragraphs containing allegations relating to/involving the Debtor and the purported transfers in total are as follows:

> 8. On April 20, 2018, Claudia G. Gabrielle (the "Debtor") filed a voluntary petition pursuant to Chapter 7 of 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

6

21. Upon information and belief, the Debtor developed a relationship with Brown beginning on or about March 2010.

22. Upon information and belief, the Debtor has publically (sic) appeared on behalf of Brown's organization, including "Whole Life Whole Health."

23. (As noted at the outset in this paragraph, the Trustee sets forth the 161 alleged transfers to Kingdom Communications which she maintains occurred purportedly within four (4) years of the date of filing.)

24. The total amount transferred to Kingdom Communications is $695,874.38 (the "Four Year Transfers").  A significant portion of the Four Year Transfers was made within 2 years of the Petition date (the "the Two Year Transfers").

26. According to the Trustee's investigation to date, all of the Four Year Transfers were made from a bank account held in the Debtor's name at Bank of America.

28. According to the Trustee's investigation to date, a review of the Debtor's schedules and financial information indicates that the Debtor transferred substantially all of her income to Kingdom Communications in 2016 and 2017.

29. According to Schedule I, the Debtor maintains a monthly income of $20,238, which on a yearly basis is approximately $242,856.

30. Upon information and belief, for calendar year 2017 alone, the Debtor's transferred over $40,000 in excess of her yearly income to Kingdom Communications.

    10.    In the case of <u>In re Hatton</u>, 2018 BNH 002, 2 – 3, this Court noted that pursuant to Fed. R. Civ.P. 12(b)(6) a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  In so doing reference was made to the First Circuit's decision in <u>Privitera v. Curran (In re Curran)</u>, 855 F.3d 19, 24 (1st Cir. 2017), affirming a decision of the First Circuit Bankruptcy Appellate Panel, <u>Privitera v. Curran (In re Curran)</u>, 554 B.R. 272, 279 (B.A.P. 1st Cir. 2016), noting that the First Circuit Bankruptcy Appellate Panel quoted from the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 – 79 (2009) for the standard in considering a motion to dismiss:

7

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556, 127 S.Ct. 1955...The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Id.] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 557, 127 S.Ct. 1955.

556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

11. Also citing from its decision in Privitera v. Curran (In re Curran), in In re Hatton this Court noted the BAP further stated:

> When considering a motion brought pursuant to Rule 12(b)(6), the court must treat all well-pleaded allegations in the complaint as true, and must view them in the light most favorable to the plaintiff. Gray, 544 F.3d at 324. However, the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. Twombly, 550 U.S. at 555-56, 127 S.Ct. 1955. Id.

12. As to the actual fraud claims and the alleged transfers within the two (2) year window of Code Section 548 [April, 2016 – April, 2018], the factual assertions advanced by the Trustee are void of any allegations that at the time of any one let alone at the time of each and every one of the 161 transfers, the Debtor faced/was involved in litigation; that she transferred all or substantially all of her property; that she was insolvent or had unmanageable indebtedness; or that she retained any interest in the property involved in the alleged transfers.

13. The only assertions which, arguendo, appear as at best remotely relating to any of the "badges of fraud" is that the Debtor developed a "relationship," albeit unspecified, with Barbara Brown on or about March, 2010 [Complaint Paragraph 21]; that according to the Trustee's investigation in 2017 the Debtor transferred "substantially all"

8

of her income to Kingdom Communications in 2016 and 2017; that her current monthly income was $20,238 (or approximately $242,856 annually); and that she transferred over $40,000 in excess of her yearly income to Kingdom Communications [Complaint Paragraphs 28 -30].[6] Nonetheless, those assertions clearly fall far short "of the line between possibility and plausibility of entitlement to relief." In re Hatton, citing Ashcroft v. Iqbal, Supra.

14. Suffice to say the complaint fails to contain factual allegations that comport with the First Circuit's decision in the case of Max Sugarman Funeral Home, Inc. v. ADB Investors, Supra, or the factors set forth under the UFTA to make out a claim of actual fraud in Counts I and III, not to mention the heightened pleading requirement for such claims mandated by Fed. R. Civ.P. 9(b).

- **The Constructive Fraud Claims –**

15. As noted above the Trustee has also advanced three (3) constructive fraud claims, specifically in Count II under the Bankruptcy Code, 548(a)(1)(B), and Counts IV and V under the certain provisions of the UFTA, by employing Code Section 544(b).[7]

16. As to Count III, Code Section 548(a)(1)(B) reads in pertinent part as follows:

> (a)(1) The trustee may avoid any transfers...of an interest of the debtor in property...that was made...on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (B) (i) received less than a reasonably equivalent value in exchange

---

[6] While also beyond the four (4) corners of the complaint and therefore the scope of the within motion, it is important to note that it appears that the Trustee mis-read Schedule 'I' to the Debtor's Petition. According to Schedule 'I' as of the date of filing the Debtor then had been employed as a physician with Associated Physicians of Harvard Medical Faculty Physicians At BIDM, Inc., for a three (3) year period, generating a gross monthly wage of $28,411.00 or $340,932.00 annually.

[7] Without in any way conceding or waiving the arguments advanced in the within motion, it is also noted that generally speaking constructive fraud claims do not apply to charitable contributions. See Code Sections 548(a)(2) and 544(b)(2).

9

> for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.
>
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured...

17. As to Count IV the provision of the UFTA upon which the Trustee relies is N.H. RSA 545-A:4 entitled "Transfers Fraudulent as to Present and Future Creditors", specifically subsection I(B), reads as follows:

> I. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

18. As to Count V, the provision of the UFTA upon which the Trustee relies is N.H. RSA 545-A:5 entitled "Transfer Fraudulent as to Present Creditors", specifically subsection I which reads as follows:

> I. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became

insolvent as a result of the transfer or obligation.

19. Simply stated as to these three (3) counts, the Trustee's allegations are void of any factual assertions to support the contention that at the time of any one let alone each and every one of the alleged transfers the Debtor was insolvent, engaged or about to engage in a business or transaction for which her remaining asserts were unreasonably small, or that the Debtor intended to incur or should have believed she would incur debts beyond her ability to pay as they became due.  The only reference to same are in the form of conclusory assertions appearing in Count II (Complaint Paragraphs 40 – 42), Count IV (Complaint Paragraphs 53 and 54) and Count V (Complaint, Paragraph 59).  As noted above, the Court should not accept such conclusory allegations as true.  See <u>In re Hatton</u>, citing <u>Privitera v. Curran</u>, Supra.

20. Inasmuch as the Trustee's veil piercing claim, Count VI, is premised on the alleged fraudulent transfers, the Defendants maintain that having failed to state a claim upon which any one of her five (5) fraudulent transfer claims may be granted ipso facto, that Count fails to state a claim as well.

## - **Conclusion** –

21. In a nutshell simply alleging that the Debtor made a number of transfers in the two (2) years prior to her bankruptcy filing which purportedly equated to "substantially all" of her income, and that she had "a relationship" with the principal of the transferee dating back to 2010, falls far short of setting forth the requisite elements for actual and constructive fraudulent transfer claims, not to mention the heightened pleading requirements for actual fraud claims as mandated by Fed. R. Civ.P. 9(b).

WHEREFORE the Defendants Kingdom Communications, Inc. and Barbara Brown respectfully request that this Honorable Court:

A. Grant the within motion and dismiss each and every claim advanced in the subject complaint for failure to state a claim upon which relief can be granted.

B. Order such further relief as it deems necessary and just.

>Respectfully submitted,
>
>KINGDOM COMMUNICATIONS, INC.
>AND BARBARA BROWN
>By Their Attorneys:
>BELIVEAU, FRADETTE & GALLANT, P.A.

Date: October 9, 2018

/s/Clifford P. Gallant, Jr.
Clifford P. Gallant, Jr., Esquire
Beliveau, Fradette & Gallant, P.A.
91 Bay Street
Manchester, NH 03104
603-623-1234  BNH # 01706